### Tapp, et al. v. Commonwealth.

(Decided May 6, 1927.)

### Appeal from Hopkins Circuit Court.

1. Criminal Law.—Evidence held insufficient to support conviction for manslaughter, where overwhelming weight of testimony showed defendant was dancing in nearby garage when shot was fired.

2. Homicide.—Evidence held sufficient to take case to jury in prosecution for homicide, where defendant, who was first man at scene after shooting, was outside garage, near which shooting occurred, at time of homicide.

3. Homicide.—In prosecution of two defendants for homicide, where there was no evidence showing co-operation between them or that they were together and only one shot was fired, instruction on aiding and abetting held error.

4. Homicide.—Where there was no direct evidence who fired shot that killed deceased, but 20-gauge shotgun was used, exclusion of evidence that there were many 20-gauge shotguns in community besides defendant's held error.

C. J. WADDILL and ED. L. YOUNG for appellants.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

Opinion of the Court by Turner, Commissioner— Reversing.

The two appellants were jointly indicted, charged with the murder of John Allen by shooting him with a shotgun. The indictment charges that one or the other fired the shot, but that the grand jury did not know which, and that the other was present aiding and abetting.

On their joint trial they were each found guilty of manslaughter and sentenced to five years' imprisonment.

The appellants are brothers, and lived about a mile and a half from each other in Hopkins county. In 1925 S. T. Tapp erected at or near the village of Beulah a two-story building fronting on or near the highway. The ground floor was to be used for a garage, while the second story was in use as his family residence at the time mentioned herein. The garage was 60 feet long by 25 feet wide, and not only had doors at the front and back, but had large windows on the sides, which at the time of the homicide under consideration had not been completed, and both the doors and windows were open so that persons might enter the building through either. The second story, however, must have been more nearly completed, for he and his family had moved into it as a residence. The rear part of the building was against a hill, and we gather that at that end there had been some excavation for the erection of the building. At any rate, at the time in question, there was no stairway from the lower floor to the upper, and the only means of entering the second floor was by an incline from the rear of the building to the second floor.

S. T. Tapp let it be known in the community that on Saturday night, the 8th of August, 1925, there would be a country dance in this building and on that night there congregated there about 200 people to attend the dance, men, women, and children. At the rear of and inside the garage there was erected a sort of stand or counter from which were sold soft drinks and eatables and S. T. Tapp was in charge principally of this stand. Musicians were present, and square dances were engaged in during the earlier part of the evening.

About 50 yards from the garage was a small woodland or grove where the persons attending the dance parked their cars, and, while it is not disclosed exactly how many were parked, there was a goodly number of them.

The decedent had been a county patrolman of that county, or some subdivision of it, up to some three or four months before that dance. He had been somewhat active in the suppression of certain lawlessness, particularly infractions of the prohibition laws; but at the time of this occurrence he seems to have had, so far as we can see from the records, no official status.

On the night in question, Allen, accompanied by one Hicks, left Dawson Springs some 6 or 7 miles distant about 10 o'clock, and drove out to the parking place near the garage. They parked their car, and shortly thereafter arrested two young men and handcuffed them to each other, one of those young men being drunk while the record shows the other was not. Allen left Hicks in charge of them and said he would go down to a certain car and get another that was there. He went in between two cars and opened the door of a car, but before that he said to somebody, "What are you doing here?" and the other answered something which was not understood, and about that time a shot was fired from a 20-gauge shotgun and Allen was immediately killed. There was in the car, the door of which he opened, a young 16 year old boy named Lawrence Tapp, the son of appellant Lee Tapp, but that boy is not indicted, and there is no suggestion that he is supposed to have fired the shot.

The three persons who were only a few feet away, and the only three so far as disclosed who were near at the time, were Hicks and the two young men left in his charge by Allen, Tinsley Howton and Hilton Roberts. Howton does not testify, presumably for the reason that at the time he is shown to have been very drunk, and possibly could have given no intelligent testimony.

Hicks' testimony, in substance, is that he and Allen left Dawson Springs about 10 o'clock in a machine, and sat in their car a short time after parking it, when they saw some men under the influence of liquor; that they arrested two of them, as above stated, and, after they were handcuffed together, Allen left them in his charge and went to arrest another man in one of the cars; that the car "was headed right up in the woods almost;" that Allen walked between two cars parked side by side and opened the car door, but before that said, "what are you doing here?" and the man muttered or. said something and the gun fired immediately; that he did not then see any one else around there, and did not soon thereafter; that, after going around and looking at Allen's body, he went up to the garage and told them that Allen was killed; that when he and Allen drove up three men were standing between these two cars, "and two broke for the dance hall and the other one stood there with the drunk man;" that he did not know any of the men, and that nobody came from the dance hall to that point before the

shooting; that neither he nor Allen had been to the dance hall before the shooting. He says the shot came from the front of the car the man was in, but that he did not see the flash from the gun. His evidence is not specific as to the distance he was from Allen, but the other evidence indicates it was about 20 feet.

Hilton Roberts testified that, after he and Howton had been arrested and left in the charge of Hicks, Allen stepped around a car about 20 feet from them for the purpose of arresting another boy, and the gun immediately fired; that he heard and saw the gun fired; but did not see any one at the time; that a minute or two after the gun fired S. T. Tapp came and was the first man who reached there and asked what was the matter.

A wad was found in the head of the dead man which indicated the weapon used was a 20-gauge shotgun, and the evidence shows that S. T. Tapp was the owner of such a gun. The other evidence for the commonwealth tends to show that neither of appellants was in the garage at the time the shot was fired, but as to appellant Lee Tapp that evidence is only negative; the witnesses saying that they did not see him there at that time. Other evidence for the commonwealth showed that defendant S. T. Tapp agreed at the coroner's inquest, held a day or two thereafter, to take and deliver his 20-gauge shotgun to the sheriff of the county, and that on Tuesday morning following, in compliance with that agreement, he did so. It is then shown by some two or three witnesses for the commonwealth that one barrel of that shotgun had recently been fired, as evidenced by the condition of that barrel; but for defendants it is shown that on the morning before the homicide S. T. Tapp had fired that gun and killed a hawk, which evidence was designed to account for the recent firing.

As to appellant Lee Tapp, the overwhelming weight of the testimony is that when the shot was fired he was in the garage; that at that time he was dancing in a set with a number of other people, and with his wife as a partner; that the set had closed either just at the time the shot was fired or immediately theretofore or thereafter, and that he was at the time dancing in that set. Not only do the other dancers in that set so testify, but many other persons who were present upon that occasion, and he then was at least 150 feet from where the automobile was parked, where Allen was shot. Outside of the evidence of

one witness there is nothing to the contrary except the negative evidence of some four or five witnesses that they did not see Lee Tapp at that time, or that that they did not then know where he was. This was a large building 60 feet long by 25 feet wide, and there were approximately 200 people in it at the time the shot was fired; consequently it is not strange that a part of its occupants should not have at that instant noticed the presence of Lee Tapp.

The defendant Lee Tapp testified that immediately after the shooting somebody told him in the crowd that his son Lawrence was involved in some sort of difficulty, and that he then immediately went through the garage, out the back way, up the incline to the second story and there got a rifle and came back, entered the garage at the rear and started toward the front door to go to the place of the trouble, that when he reached the garage with the rifle some of his relatives and friends took hold of him and finally at or near the front door the rifle was taken from him, and that all those things took place after the shot had been fired which killed Allen. This evidence of Lee Tapp is corroborated by as many as 15 or 20 witnesses, and the fact that he was present dancing when the shot was fired, by quite as many or more witnesses.

The only witness we find who gives any evidence contrary to the above is that of Opal Fox, who testifies that he reached the dance about 10 o'clock and was there when the shot was fired; that he had seen Lee Tapp dancing before the shot was fired, but that he was not there at the time it was fired; that before the shot was fired he had seen Lee Tapp with something that "looked like a gun;" that he had just stepped off the incline back of the garage; that the next time he saw him was only a minute or two, when he saw him at the front door and still had something that looked like a gun, and at that time "there was some more folks there with him kind of scuffling over the gun;" that his sister-in-law, S. T. Tapp's wife, and S. T. Tapp's son were among those scuffling with him over the gun. This witness, however, on cross-examination, admits that, if Lee Tapp came off the incline, and into the window of the garage and over there to the front, where he was accosted by his wife and other relatives, as testified to by any number of witnesses, then that it was after the shooting and not before that the witness saw

him. A careful scrutiny of this witness' evidence, taken in connection with the overwhelming weight of all the evidence, is convincing that he had reference to occurrences after the shooting and not to things that occurred theretofore. He says it was only "a minute or two" after he saw Lee Tapp step off of the incline until he saw him at the front door of the garage, but does not say or undertake to affirm that within that short interval the shot had been fired.

Our conclusion as to appellant Lee Tapp is that the verdict was flagrantly against the evidence, and that the lower court should have granted him a new trial.

As to appellant S. T. Tapp, the evidence presents some different aspects. He himself states that at the time the shot was fired he was just returning from a stay "out in the bushes" in response to a call of nature, and was about 10 feet from the back door; that he went in and there was some excitement, and he learned somebody had been hurt and finally that Allen had been killed; that he immediately went down there with some other persons and saw Allen's body, and then went back to the building, and then went down with some other persons, but shortly came back to the house and put in a call for the sheriff. He admits that he was the owner, among other firearms, of a 20-guage double-barrel shotgun, and the evidence for the commonwealth tends to show that an hour or two after the shooting, when a search was made of his residence upstairs, that no such gun was there. Not only so, the evidence tends to show that when he delivered the shotgun to the sheriff two or three days later one of its barrels gave evidence of having been recently fired, while the other indicated it had not been fired for a long time.

The witness Hicks testified that when he and Allen first reached the parking place he saw three men between two parked cars, and that when they saw him and Allen two of them immediately ran toward the garage, while the third, as he expresses it, stayed with the drunken man or boy. This was only a short time before the shot was fired, and therefore at a time when S. T. Tapp admits he was not in the garage. Hilton Roberts, one of the boys placed under arrest by Allen, and who was handcuffed, states that he saw and heard the shot, and was only about 20 feet from Allen at the time, and that S. T. Tapp was the first man who appeared there after the shot, but says

in his cross-examination that S. T. Tapp came out of the front of the building.

There is no direct evidence that either of defendants fired the shot that killed Allen, but the admitted fact that S. T. Tapp, the owner of a 20-gauge shotgun which he kept in his residence at that plcea, was outside of the building when the shot was fired and had been for some minutes, the fact that he was the first man at the scene of the shooting other than Hicks and his two prisoners, and the fact that one of the three men seen by Hicks a few minutes theretofore had not gone back to the garage, and that this was at a time when S. T. Tapp admittedly was outside of the garage, taken in connection with other circumstances which we will not undertake to detail, appear to have justified the submission of the case as to him.

The court in its instructions as to each of defendants authorized a conviction for aiding and abetting. There was no semblance of evidence tending to show that the two defendants cooperated with each other in the killing of Allen. There was but one shot fired, and all the evidence shows that there was only one man in that locality other than the drunken boy in the car and Hicks and his two prisoners, who could have fired the shot. It shows affirmatively that, of the three men that had a short time theretofore been between the two cars, two had before the shot gone back to the garage, and that the other remained with the drunken boy. There is nothing to show, or from which it may be inferred, that both of appellants were at any time together near that car during that night; in fact, the evidence not only fails to show any cooperation between them, but fails to show they had even spoken to each other at the garage or elsewhere upon that occasion. Rather, it affirmatively shows, so far as Lee Tapp is concerned, that he was not at the place of the homicide and had not been in that locality for some time before. Clearly therefore, under these circumstances, there was no justification for the instruction on aiding and abetting. On another trial, if the evidence be the same, the aiding and abetting feature will be eliminated, and the self-defense instruction correspondingly changed. Under the evidence only one of them could have shot Allen, and under the evidence could not have shot him in defense of the other.

On the trial, defendants offered to prove that there were many 20-gauge shotguns in that community other than the one owned by appellant S. T. Tapp, and the court declined to permit them to do so. That was error. In the absence of any direct evidence of who fired the shot, or any direct evidence of the identity of the owner of the 20-gauge shotgun with which it was fired, defendants were entitled to show that others in that locality had guns of that description from which the shot might have been fired, and especially in the light of the contradictory evidence as to whether or not S. T. Tapp's 20-gauge gun was in his residence on the night of the homicide.

We fail to find any other errors in the admission and rejection of evidence.

For the reasons stated, the judgment is reversed as to each of appellants, with directions to grant each of them a new trial.